UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID TORRES,

        Petitioner,

V.

SUPERINTENDENT OF UPSTATE CORRECTIONAL FACILITY,[1]

        Respondent.

**REPORT AND RECOMMENDATION**

01-CV-1337

---

## I. INTRODUCTION

Petitioner, David Torres, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1999, he was penalized after a prison disciplinary hearing at Ulster Correctional Facility. He contends that his punishment was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is

---

[1] "Superintendent of the Upstate Correctional Facility" is the named respondent in this action. However, the correct respondent in a habeas corpus petition is the superintendent of the facility where the petitioner is being held. 28 U.S.C. § 2243. Given that Petitioner is now incarcerated in the Auburn Correctional Facility, the correct Respondent is John Burge, the Superintendent of the Auburn Correctional Facility. Id. In light of Petitioner's *pro se* status, the fact that this will in no way prejudice Respondent, and in the interests of court efficiency, this Court will deem the petition amended to change the name of Respondent to John Burge.
    The Clerk of the Court is directed to terminate "Superintendent of the Upstate Correctional Facility" as Respondent, add John Burge, Superintendent of the Auburn Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

presently before this Court for a report and recommendation. (Docket No. 16).

## II. BACKGROUND

**A.      Facts**

The following factual summary is derived from the prison records attached to Respondent's Answer. (Docket No. 6). On November 13, 1998, Petitioner was transferred to the Special Housing Unit ("SHU") at Ulster Correctional Facility in Napanock, New York. During the admission process, Petitioner was escorted to the "frisk room" where an altercation ensued between Petitioner and Correction Officer M. Connors ("Connors"). Petitioner allegedly struck Connors on the right side of his face with his elbow. (Docket No. 6 at Ex. A). Thereafter, Petitioner was served with an inmate misbehavior report on November 14, 1998. (Id.). Petitioner was charged with assault on a staff member, refusing a direct order, and refusing a search or frisk.

A prison disciplinary hearing commenced on January 15, 1999 and concluded on January 19, 1999. (Docket No. 6 at Ex. B). Deputy Superintendent Budd was designated as the hearing officer. (Id. at p. 1). Petitioner pled not guilty to the charges in the inmate misbehavior report. (Id. at p.2-3). Petitioner asserted that he was wearing handcuffs during the frisk and would have been unable to hit Connors. (Id. at 5). However, the testimony of various Corrections Officers at the hearing was that Petitioner's handcuffs were removed in the frisk room. (Id. at 24, 39,55, 62-63). Petitioner asserted that the frisk violated Department of Correctional Services ("DOCS") policy that a sergeant be present in the frisk room when an inmate is being admitted to the SHU. (Id. at 59). The hearing officer stated

that the sergeant only had to be present in the SHU, not in the frisk room. (Id. at 10, 60). During the hearing, Petitioner admitted that he did not answer when Connors asked Petitioner if he had anything sharp in his pockets. (Id. at 4). Later in the hearing, Petitioner decided to plead guilty to the charge of refusing a direct order. (Id. at 18).

On January 19, 1999, the hearing officer found Petitioner guilty of all charges. (Id. at 81). The hearing officer cited the misbehavior report, the corroborating testimony of the corrections officers, and Petitioner's admission that he failed to answer Connor's question regarding sharp objects. (Id. ). Petitioner was given the penalty of 730 days confinement to the SHU with loss of telephone, packages, and commissary, 21 days of restricted diet, suspended and deferred for 180 days, and two years recommended loss of good time. (Docket No. 6 at Ex. C). After administrative appeal, Petitioner's penalty was reduced to 365 days of confinement to the SHU with loss of privileges, and 12 months recommended loss of good time. It is not clear from the record whether the recommended loss of good time was adopted. On January 12, 2007, Petitioner was conditionally paroled.

**B.    State Appellate Proceedings**

Petitioner, acting *pro se*, commenced an Article 78 proceeding in the Supreme Court of the State of New York, County of Ulster, seeking to reverse and expunge the disciplinary determination. (Docket No. 6 Ex. A). The Court found that the Article 78 petition raised evidentiary issues with respect to the disciplinary hearing, requiring the Court to transfer it to the Appellate Division, Third Department for determination. (Docket No. 6 Ex. 4).

In a decision issued on September 21, 2000, the Appellate Division confirmed the disciplinary determination and denied the petition. Torres v. Goord, 713 N.Y.S.2d 509 (3d Dep't 2000). The Appellate Division found that "[t]he detailed misbehavior report, together

with corroborating testimony from other correction officers in the vicinity and petitioner's admission, provide substantial evidence to support the determination of guilt." Id. The appellate court went on to state "[w]e also reject petitioner's assertion that he was denied due process by the failure of other correction officers who were peripherally involved in the incident to endorse the misbehavior report or author their own inasmuch as petitioner has failed to establish any prejudice resulting therefrom." Id.

## C.  Federal Habeas Corpus Proceedings

Petitioner commenced this action on August 27, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Thereafter, the Respondent filed submissions outlining his position. (Docket No. 6 & 7).

## III. DISCUSSION

### A.  Jurisdiction

As a threshold matter, this Court notes that the fact that Petitioner is currently paroled does not deprive it of jurisdiction to decide the case, or render the Petition moot. Jones v. Cunningham, 371 U.S. 236(1963); Peck v. United States, 73 F.3d 1220, 1224 n. 5 (2d Cir.1995). Section 2254, like section 2255, grants a remedy to petitioners in custody, and that condition "encompasses situations where the state has imposed restrictions that 'significantly restrain a petitioner's liberty to do those things which in this country free men are entitled to do.' " United States v. Weiss, 902 F.Supp. 326, 328 (N.D.N.Y.1995) (citing Jones, 371 U.S. at 243). The basic requirements of parole or supervised release, such as regular reporting, impose such restrictions. See Jones, 371 U.S. at 242. Moreover, the

State may revoke its clemency and incarcerate Petitioner again. See Cates v. Superintendent, Indiana Youth Ctr., 981 F.2d 949, 952 (7th Cir.1992). Therefore, determination of the merits of this case is appropriate.

**B.  Federal Habeas Corpus Standard**

To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254. Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006); see also, Jenkins v. Haubert, 179 F.3d 19, 22 (2d Cir. 1999)(discussing habeas relief for prisoners under Preiser.).

The Fourteenth Amendment's Due Process Clause protections apply to determinations affecting duration of confinement because an inmate's liberty interest is at risk. Wolff v. McDonnell, 418 U.S. 539 (1974). A disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." Wolff, 418 U.S. at 556-57. Therefore, habeas corpus is the appropriate vehicle in which to challenge a disciplinary proceeding that results in the loss of good time credits. See Preiser, 411 U.S. at 500 (holding that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits"). However, because these protections do not apply to mere changes in the conditions of confinement, the Court rejects the SHU confinement claim as not cognizable. Id. at 557.

**C.  Petitioner's Claims**

Petitioner asserts four claims in support of his Petition: (1) that the hearing officer

incorrectly found that a Sergeant does not have to be present in the frisk area when an inmate is being admitted to the SHU, (2) that the hearing officer incorrectly found that a Sergeant who testified against Petitioner at the disciplinary hearing did not have to submit a written report, (3) that the hearing officer incorrectly found that the other officers who testified at the disciplinary hearing did not have to submit written reports, and (4) that the disciplinary sentence of 1 year in the SHU and 1 year recommended loss of good time credits violated his constitutional rights.

Respondent argues that this Petition should be dismissed because Petitioner failed to exhaust his remedies in state court. However, federal courts have the discretion to deny a petitioner's unexhausted claims on the merits. See 28 U.S.C. § 2254(b). Further, Respondent argues in a footnote that Petitioner's recommended loss of good time credits fails to implicate a liberty interest because it is only a recommendation (Docket No. 7 at p. 8, fn 2); but the record presented to this Court does not disclose whether Petitioner actually lost these credits. Thus, in the interest of judicial economy, this Court will find that the instant Petition, alleging the loss of good time credits on Fourteenth Amendment Due Process grounds, implicates his liberty interest whether the alleged violation was the hearing officer's recommendation or the actual loss of good time credits. However, for the reasons stated below, this Court finds that Petitioner was not deprived of due process and his Petition should therefore be DISMISSED.

**Due Process Protections**

The due process protections afforded a prison inmate do not equate to "the full panoply of rights" due to a defendant in a criminal prosecution. Wolff, 418 U.S. at 556. For example, the Second Circuit Court of Appeals has noted that, "there is no right to counsel or

to confrontation at prison disciplinary hearings." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). When prisoners are disciplined as the result of a disciplinary hearing determination, the Fourteenth Amendment's Due Process Clause guarantees certain procedural protections, including: (1) at least 24-hour advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 559, see also, Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999); Sira, 380 F.3d at 68. The Second Circuit Court of Appeals has held that the protections afforded by Wolff apply to an inmate facing SHU confinement. McCann v. Coughlin, 698 F.2d 112, 121-22 (2d Cir.1983).

The Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985). The Second Circuit has noted that this standard is extremely tolerant and is satisfied if "there is any evidence in the record that supports" the disciplinary ruling. Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000), see also, Sira, 380 F.3d at 69. However, the "some evidence" standard requires some "reliable evidence." Id.

In the present case, there is no dispute that Petitioner was served with a copy of the misbehavior report on November 14, 1998, (Docket No. 6 Ex. A and Ex. B at p. 2), which was more than two months before the hearing and well in excess of the 24-hour minimum period required by Wolff. Wolff, 418 U.S. at 564. Petitioner does not dispute that his hearing was conducted by an impartial hearing officer. (Docket No. 6 at Ex. B). Petitioner

7

was informed that he had the right to call witnesses. Id. at Ex. B at p. 1,6. In fact, Petitioner called a number of staff members, including Corrections Officers Connors, Grenier, Nagle, as well as Sergeants Couch and Paterno. See Id.

Lastly, Hearing Officer Budd issued a written disposition explaining the evidence that he relied upon and setting forth the reasons for his disciplinary action and recommendation for loss of good time credits. Id. at p. 81. Budd stated that he relied on the misbehavior report and Correction Officer Connors' testimony verifying what happened. Id. He went on to explain that he relied upon the testimony of Sergeants Couch and Paterno, along with the other Corrections Officers that testified. Id. Budd also explained that he relied upon Petitioner's own admission that he failed to respond to Connors' request. Id. This Court finds that a review of the prison record in this case shows that Petitioner received all of the process that was due to him and that there was reliable evidence against him to support the hearing officer's determination. As such, even assuming arguendo that Petitioner's liberty interest was implicated by the recommendation for or actual loss of "good time" credits, Petitioner has failed to establish that the deprivation of his liberty was in violation of his federal constitutional rights.

Accordingly, the Petition for habeas corpus relief should be DENIED.

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Petition be DISMISSED. Further, because the Court finds there is no substantial question presented for appellate review, it recommends that a certificate of appealability not issue. 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:     January 17, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995);

Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 17, 2007

Victor E. Bianchini
United States Magistrate Judge